STATE OF WEST VIRGINIA

*In re* **H.C.**

**No. 17-0952** (Mercer County 17-JA-064)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father B.H., by counsel P. Michael Magann, appeals the Circuit Court of Mercer County's September 20, 2017, order terminating his parental, custodial, and guardianship rights to H.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Davis, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, petitioner pled guilty to first-degree sexual abuse in December of 2005 for sexually assaulting a nine-year-old female relative. Petitioner served nine months in prison and was placed on probation for ten years. As part of his probation, he was required to register as a sex offender and have no contact with children under the age of eighteen. The mother gave birth to H.C. in 2008.[2] According to petitioner, the child was placed with the maternal grandmother shortly after her birth due to petitioner's conviction and the mother's congenital condition known as Arthrogryposis.[3] The grandmother raised the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner was granted supervised visits with H.C. beginning in 2009. Both petitioner and the mother received services through the DHHR at that time, including supervised visits and parenting and adult life skills classes.

[3]The condition prevents the mother from being able to move her arms or legs and confines her to a motorized wheelchair.

child until approximately February of 2017, one month before the instant petition against petitioner was filed. The child was removed by Child Protective Services ("CPS") after learning that the grandmother and the child were living in a garden shed due to the grandmother's belief that her deceased husband was haunting her house. The child was only permitted to bathe on Sundays and had to use the bathroom in a five-gallon bucket. CPS placed the child with the mother and petitioner, who had completed his ten-year probation by that time.

In March of 2017, the DHHR filed an abuse and neglect petition against petitioner and the mother. The DHHR alleged that the mother allowed the child to be with petitioner and an individual substantiated by CPS as a sex offender, without supervision.[4] Further, the DHHR noted petitioner's plea to first-degree sexual abuse. The DHHR stated that when petitioner was granted supervised visits in 2009, he was required to submit to a polygraph examination, which he failed. Additionally, the DHHR alleged that petitioner failed to accept responsibility for his commission of sexually abusive acts toward a child.

In April of 2017, the DHHR filed an amended petition and alleged that petitioner allowed inappropriate people to live in the home with the child, including two individuals who had either had their children removed from their custody or had their parental rights terminated. Other visitors frequenting the home included drug addicts and the CPS-substantiated sex offender. The DHHR alleged that petitioner continued to deny the crimes of which he was found guilty. Additionally, the DHHR alleged that petitioner abandoned the child, as he had no contact with her after 2014 and failed to provide for her financially, physically, socially, or emotionally. Finally, the DHHR alleged that petitioner had ongoing mental health problems and abused non-prescribed medications. Notably, petitioner tested positive for Suboxone in March of 2017.

In June of 2017, the circuit court held an adjudicatory hearing during which petitioner stipulated to neglecting the child by allowing inappropriate people in the home. Petitioner also requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation and scheduled the dispositional hearing.

The circuit court held a dispositional hearing in September of 2017. The DHHR presented the testimony of several witnesses in support of its motion to terminate petitioner's parental, custodial, and guardianship rights. Several CPS workers testified that the child was out of petitioner's care for the vast majority of her life. The evidence further showed that petitioner allowed inappropriate people to be in his home, including persons with open CPS cases and a suspected sex offender. Further, these people were suspected of stealing the mother's prescription medications. A service provider testified that petitioner failed to comply with drug screens, providing only two out of seventeen requested screens, both of which were positive for non-prescribed medications or cocaine. Another service provider testified that she appeared at one appointment to observe that petitioner was drunk and refused to provide a screen. Several other times petitioner refused to screen or the providers were unable to contact him. She further

---

[4]A protection plan implemented by CPS did not specifically state that petitioner was not to have unsupervised contact with the child. It did state that he was not to be a part of her bathing or grooming. However, a CPS worker later testified at the dispositional hearing that there was a verbal agreement that he was not to have unsupervised time with the child.

testified that petitioner participated in supervised visitation, but that she observed no difference or improvement in his ability to take care of the child. Supervised visitation was eventually terminated at the child's request. Petitioner's physician's assistant also testified that petitioner ceased attending his sessions at Southern Highlands Community Mental Health Center, which were aimed at treating his bipolar disorder.

Petitioner then testified that he did take responsibility for his actions and apologized for refusing to admit guilt in the past. Petitioner explained that he did not visit with the child often after 2014 because the grandmother did not want to bring the child to the visits. Petitioner testified that he and the mother moved into a motel room because it was more affordable, that he received $700 in income per month, and that he believed that he and the mother could provide for the child. Petitioner also testified that he had an "addictive personality" and struggled with alcohol and cocaine. However, he had recently begun attending a Suboxone clinic in an effort to address his rehabilitation. After hearing evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was in the child's best interest. The circuit court found that petitioner allowed inappropriate people in the home and did not have stable housing. The circuit court also noted that petitioner exercised bad judgment in avoiding his drug screens and abusing cocaine. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated his parental, custodial, and guardianship rights.[5] It is from the September 20, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating his parental, custodial, and guardianship rights without first granting him an improvement period. We

---

[5]The mother's parental, custodial, and guardianship rights were also terminated during the proceedings below. The permanency plan for the child is adoption by relatives.

disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record establishes that petitioner failed to demonstrate his ability to fully participate in an improvement period. Petitioner argues that he would have complied with services because he previously complied with services in 2009 in an effort to modify his probation so that he could visit with H.C. However, the record indicates that petitioner failed to visit the child after 2014 and did not participate in drug screens. While petitioner completely stopped visiting in 2014, his visits were inconsistent as early as 2012. Petitioner argues that he could not visit H.C. because the grandmother refused to bring the child to visits. However, petitioner did not seek assistance through the circuit court to enforce visitation for the two years preceding the filing of the petition. Further, although the circuit court ordered petitioner to provide drug screens throughout the proceedings, he only provided two out of seventeen screens, both of which were positive for drugs. Testimony at the dispositional hearing suggested that petitioner was observed to be drunk at one screening, refused to screen several times, and did not maintain contact with service providers in order to provide screens. Petitioner's argument that he would successfully complete an improvement period if given the chance is unpersuasive in light of his actions during the proceedings below. As such, petitioner did not demonstrate that he was likely to substantially comply with the terms or conditions of an improvement period.

Moreover, we find no error in the termination of petitioner's parental, custodial, and guardianship rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner only participated in two drug screens throughout the proceedings below and tested positive both times, including testing positive for cocaine near the time of the dispositional hearing. Petitioner did not visit with the child after 2014 and visits during the proceedings below were ended at the child's request. The record also

4

indicates that petitioner stopped attending his appointments aimed at treating his bipolar disorder. Moreover, petitioner allowed inappropriate persons in the home and did not maintain stable housing, as he lived in two hotels during the proceedings below. Based on the evidence, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. As mentioned, circuit courts are directed to terminate parental, custodial, and guardianship rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker